# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) Case: 1:22-mj-00084 |
| | ) Assigned To : Harvey, G. Michael |
| | ) Assign. Date : 4/20/2022 |
| **JOHN JUSTIN MOORE,** | ) Description: COMPLAINT W/ ARREST WARRANT |
| **IAN ANDREW MCCOY,** | ) |
| | ) |
| **Defendants.** | ) |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kelsey Minyon, Special Agent of Homeland Security Investigations (HSI), Washington D.C., being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since April 2019. Since December 2019, I have been assigned to the HSI High Intensity Drug Trafficking Area (HIDTA) Group. I have received formal training and have experience in narcotics investigations. I have participated in multiple separate investigations involving the distribution of controlled substances and firearms. I have become familiar with the methods and techniques associated with the distribution of narcotics and firearms, the laundering of illegally obtained proceeds, and the organization of drug conspiracies. As a part of these investigations, I have used various investigative techniques including physical and stationary surveillance, confidential informants and cooperating sources, court-authorized interceptions, undercover operations, physical searches, mail covers, and electronic examinations of evidence. I have worked alongside and consulted with other law enforcement officials and other professionals experienced in drug-related investigations.

1

2. Based on my training and experience, I am familiar with how narcotics traffickers communicate and operate. I am aware of how narcotics traffickers organize and operate their illegal activities, including the use of locations, vehicles, and other resources in the furtherance of the illegal activities. I am familiar with the typical make up and operation of narcotics trafficking organizations including the distribution, storage, and transportation of the illegal drugs, the collection of money which represents the proceeds of narcotics trafficking and other criminal activity, and money laundering. As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer I am authorized to execute warrants issued under the authority of the United States.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant. It does not set forth all my knowledge, or the knowledge of others, about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, I respectfully submit that there is probable cause to believe that a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) (Distribution and Possession with Intent to Distribute More than 50 grams of Methamphetamine) has been committed by **JOHN JUSTIN MOORE ("MOORE")** and **IAN ANDREW MCCOY ("MCCOY").**

## PROBABLE CAUSE

5. At approximately 6:00 a.m. on April 20, 2022, law enforcement officers from HSI and the Metropolitan Police Department (MPD) arrived at 3460 14th Street Northwest Washington, D.C. 20010 to serve judicially authorized search warrant 22-SW-110 on Apartment 47, **MOORE's** known address.

2

6. At approximately 6:02 a.m., officers conducted a knock and announce on the front door of Apartment 47 with no answer. Officers then forced entry into the apartment and observed **MOORE, MCCOY,** and another individual. All three individuals were detained, and a search of the premises was conducted by members of MPD and HSI.

7. Numerous items were discovered during the search confirming **MOORE's** residence in the apartment, including forms of identification for **MOORE**.

8. In searching the premises, law enforcement discovered and seized 464 grams of apparent methamphetamine. A portion of the apparent methamphetamine field tested positive for the presence of amphetamines.

9. The seized methamphetamine was crystalline in appearance, and the crystals themselves were large and clear.




Based on my training and experience, I know that methamphetamine does not form large, clear crystals unless it is more than 80% pure. As such, based on my training and experience, the actual weight of the methamphetamine seized from **MOORE's** apartment was in excess of 50 grams.

10. During the execution of the search warrant, both **MOORE** and **MCCOY** waived their *Miranda* rights and agreed to answer questions from law enforcement officers. In response to law enforcement's questions, both **MOORE** and **MCCOY** admitted to being involved in the distribution of methamphetamine. In response to law enforcement's questions, **MOORE** admitted that **MCCOY** was the source of supply for all of the methamphetamine located in **MOORE's** apartment. In response to law enforcement's questions, **MOORE** admitted that he was intending to distribute the methamphetamine that he received from **MCCOY**.

11. In addition to the methamphetamine, law enforcement discovered and seized apparent controlled substances which will be forwarded to certified laboratory for confirmation testing. The total amount of suspected controlled substances seized was:

    a. 328 grams of suspected Gamma-Buytyrolactone, a Schedule I controlled substance.

    b. 69 grams of suspected Ketamine, a Schedule II controlled substance.

    c. 20 pills containing an unknown mixture of substances.

12. In response to law enforcement's questions, **MOORE** stated that these substances were his and that he had obtained them from a source other than **MCCOY**.

13. In addition to controlled substances, law enforcement discovered assorted items related to distribution of controlled substances, including:

    a. One digital scale.

    b. One duffel bag, which contained a drug ledger.

    c. One "grinder," used to break down large crystals into smaller quantities.

    d. Four cellular telephones.

    e. One desktop computer.

    f. Six laptop computers.

    g. Three tablet computers.

    h. Two external hard drives.

    i. Approximately $4,100 in United States currency.

14. Based on my training and experience investigating narcotics offenses, the quantity of narcotics, as well as the digital scale, grinder, and other paraphernalia present in the apartment – as well as the statements outlined above – **JOHN JUSTIN MOORE** and **IAN ANDREW MCCOY** possessed the methamphetamine described above with the intent to distribute it, rather than for personal use.

15. Based on the foregoing, your affiant asserts that there is probable cause to conclude that, on or about April 20, 2022, in the District of Columbia, **JOHN JUSTIN MOORE** and **IAN ANDREW MCCOY** violated 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) (Possession with Intent to Distribute More than 50 grams of Methamphetamine).

*[Signature: Kelsey Minyon]*

Special Agent Kelsey Minyon
Homeland Security Investigations

Subscribed and sworn by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on April 20, 2022.

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE